[Cite as *Vanderbilt v. Vanderbilt*, 2014-Ohio-3652.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

BARBARA A. VANDERBILT

    Appellee

    v.

SHANE W. VANDERBILT

    Appellant

C.A. No.     13CA0084-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    09 DR 0086

DECISION AND JOURNAL ENTRY

Dated: August 25, 2014

HENSAL, Presiding Judge.

{¶1}   Appellant, Shane Vanderbilt, appeals the order of the Medina County Court of Common Pleas, Domestic Relations Division, that ordered him to pay spousal support. This Court reverses.

I.

{¶2}   Barbara and Shane Vanderbilt married in 1999 after a long relationship. Immediately before they married, the couple executed a prenuptial agreement that governed the division of their property and included a mutual waiver of spousal support in the event of divorce. In anticipation of marriage, the couple also designed their dream home, which they built and furnished to their specifications early in the marriage. Throughout their relationship, Wife worked full-time for a county agency and owned a modest home that she shared with Husband. Wife maintained this employment before and throughout the marriage, and her job provided a steady level of income, no-cost health benefits for her, and a public employee

pension. During the marriage, Wife used her earnings to fund the couple's living expenses. She supplemented her stream of income with approximately $60,000 that resulted from the sale of her premarital home, from which she paid for a portion of her children's college education, an extra automobile, and various living expenses.

{¶3} Wife filed a complaint for divorce in 2009. During the divorce proceedings, Husband moved the trial court to implement the terms of the prenuptial agreement. The trial court determined that the agreement was valid, but that it did not control with respect to spousal support. Husband appealed, and this Court concluded that the trial court erred by awarding spousal support without determining whether application of the prenuptial agreement at the time of the divorce was unconscionable. *Vanderbilt v. Vanderbilt*, 9th Dist. Medina No. 11CA0103-M, 11CA0104-M, 2013-Ohio-1222, ¶ 39-41. On remand, the trial court awarded spousal support to Wife in the amount of $3,500 per month for 49 months. The trial court based its determination in large measure on the conclusion that because "[t]hrough the marriage the [W]ife's lifestyle dramatically changed. * * * Enforcement of said provisions would return the [W]ife to her prior standard of living, which would be a hardship on her." Husband filed this appeal.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DETERMINING THE SPOUSAL SUPPORT PROVISION OF THE PARTIES' PRENUPTIAL AGREEMENT TO BE UNCONSCIONABLE.

{¶4} Husband argues that the trial court erred by determining that the parties' lifestyle during the marriage rendered the prenuptial agreement unconscionable as of the time of the divorce. We agree.

{¶5}    Prenuptial agreements may contain provisions related to spousal support, but "a party may challenge the spousal support provisions contained therein by demonstrating that the terms related to spousal support are unconscionable at the time of the divorce."  *Vanderbilt* at ¶ 39, citing *Gross v. Gross*, 11 Ohio St.3d 99, 109 (1984).  This determination does not go to the validity of the prenuptial agreement itself, but to the question of whether spousal support provisions may be enforced at the time of the divorce.  *See Gross* at 100.

{¶6}    The statutory considerations that govern an award of spousal support under R.C. 3105.18(C)(1) guide this conscionability analysis.  *Vanderbilt*, 2013-Ohio-1222, at ¶ 39.  Consequently, the trial court must consider the income, assets, and liabilities of the parties; their relative earning capacities, educational attainments, and retirement benefits; the ages and health of the parties; the duration of the marriage and the parties' standard of living; the contribution of one spouse to the education or training of the other and, conversely, the resources necessary for one spouse to obtain appropriate employment; and whether either party lost employment capacity as a result of marital responsibilities.  R.C. 3105.18(C)(1).  This list of factors is nonexclusive.  *See* R.C. 3105.18(C)(1)(n).

{¶7}    The critical factor in this determination, however, is whether there are "*changed circumstances* which render the provisions unconscionable as to one or the other at the time of the divorce[.]"  (Emphasis added.)  *Gross* at 109.  In this respect, the Ohio Supreme Court has explained:

> Unconscionability of a provision for maintenance and sustenance contained in an antenuptial agreement may be found in a number of circumstances, examples of which might be an extreme health problem requiring considerable care and expense; change in employability of the spouse; additional burdens placed upon a spouse by way of responsibility to children of the parties; marked changes in the cost of providing the necessary maintenance of the spouse; and changed circumstance of the standards of living occasioned by the marriage, where a return to the prior living standard would work a hardship upon a spouse.

*Id*. at 109, fn.11. Put simply, the conscionability analysis considers whether a couple's circumstances have changed during the marriage to such a degree that the spouse seeking spousal support should be relieved of the agreement he or she made regarding spousal support. Because a valid prenuptial agreement is one that the parties enter into freely and with full disclosure, *see Vanderbilt* at ¶ 7, this analysis presumes that the changed circumstances would not have been contemplated at the time of the agreement. When a trial court declines to apply a spousal support provision without first determining that such changed circumstances exist, it errs as a matter of law, and our review is de novo. *See Saari v. Saari*, 9th Dist. Lorain No. 08CA009507, 2009-Ohio-4940, ¶ 11.

{¶8} Two cases illustrate the importance of a true change in circumstances to our analysis. In *Gross*, the Ohio Supreme Court considered the validity of prenuptial agreements under Ohio law for the first time. In that case, the Husband enjoyed a substantial income from a number of beverage franchises. *Gross*, 11 Ohio St.3d at 100. Before they married, the Wife was employed by the Husband's company as a secretary. *Id*. Both had been married before, and they executed a prenuptial agreement in anticipation of marriage. The agreement provided that in the event of divorce, the Wife would be entitled to $200 per month in spousal support for ten years. *Id*. at 101. During the couple's fourteen-year marriage, the Husband's assets increased in value from approximately $550,000 to $8 million. *Id*. at 101-102. Although the Court upheld the prenuptial agreement, it concluded that changed circumstances over the course of the marriage rendered application of the spousal support provisions unconscionable. *Id*. at 111. Specifically, the Court noted that magnitude of the Husband's increase in assets and the "opulent" nature of the couple's lifestyle when compared to the $200 per month to which the Wife would be entitled under the prenuptial agreement "could well occasion a hardship or be significantly difficult for

the former [W]ife." *Id*. at 110. In other words, the Court recognized that an increase in the assets of one party coupled with a dramatic change in lifestyle during the course of a marriage could, in comparison to the amount of spousal support permitted under a prenuptial agreement, render the support provisions unconscionable at the time of the divorce.

{¶9} This Court considered similar issues, but reached the opposite result, in *Saari*. In that case, the Husband and Wife were both employed in the financial sector prior to their marriage. *Saari* at ¶ 2. They executed a prenuptial agreement that provided, in part, that each party agreed to forgo the right to spousal support. *Id.* Although the Wife lost her job shortly before the wedding, she later obtained work in the same industry. *Id*. at ¶ 2-3. Throughout their marriage, which lasted only three years, the parties "enjoyed what they referred to as a 'comfortable' and 'upper class' style of living, free of financial worries." *Id*. at ¶ 3. When they divorced, the trial court concluded that spousal support provision in the prenuptial agreement was unconscionable based on the parties' respective earning capacities and awarded the Wife $4,000 per month in spousal support for twelve months. *Id.* at ¶ 5.

{¶10} On appeal, this Court concluded that the trial court erred as a matter of law because it failed to consider the factors set forth in R.C. 3105.18(C) and awarded spousal support when there had not been a change in circumstances over the course of the marriage. *Id*. at ¶ 13, 15. We also determined that when the evidence was examined in light of R.C. 3105.18, it mitigated in favor of enforcing the agreement. *Id*. at ¶ 14. Specifically, this Court noted:

> Here, the record reveals that it was a second marriage for both parties that produced no children and lasted only three years. Before the marriage, Wife was employed in a full-time management position at a bank, and while being terminated from that position approximately a month before their wedding, she continued to work part-time throughout the beginning of the marriage, first as a business consultant with a start up company, then as an accountant with a jewelry store, only to later return to a full-time position as a financial analyst in the banking industry. Wife admits that before the marriage, she lived in the same

house and sent her two children to the same private school as she did at the end of the marriage. She admits that the parties did not travel extensively or belong to any country clubs while she was married to Husband. Furthermore, there is no testimony that she suffered from any health conditions, incurred any additional burdens for the care of any children, or had a marked change in her standard of living or cost of necessary maintenance expenses, as alluded to in *Gross*.

*Id*. Because there had been no change in circumstances that would render application of the support provision unconscionable, this Court reversed. *Id*. "In short, there was no significant change in circumstances between the time she signed the prenuptial agreement, which the court found to be valid, and the time she sought a divorce." *Id*.

{¶11} This case presents a situation more like *Saari* than *Gross*. With respect to Wife's employment and earning capacity, there has been no change that would warrant deviation from the terms of the prenuptial agreement. Wife was employed full-time at the time the prenuptial agreement was executed and has been continuously employed in the same position since. Although Wife did sell her home before the marriage, the proceeds from that sale appear to have been used, at least in part, to fund the higher education of her adult children – a potential expense that has now been eliminated. Wife did not invest her own financial resources or sacrifice her career to benefit Husband's business interests, and she has no barriers to continued employment in the same capacity that she enjoyed before and during the marriage. Although Wife maintained in the course of the previous appeal that she made significant indirect contributions to Husband's success, this Court rejected that position in light of the prenuptial agreement. *Vanderbilt*, 2013-Ohio-1222, at ¶ 32.

{¶12} To the extent that Wife's standard of living has changed, it is significant that the change occurred over the course of the couple's lengthy relationship and not merely as a result of the marriage. Due in part to Husband's higher income, the couple enjoyed a higher standard of living than Wife did on her own, but the record indicates that the higher standard of living was

established before the marriage. In other words, Wife enjoyed a higher standard of living as a result of her relationship with Husband at the time that she executed the prenuptial agreement. It was neither drastic nor unanticipated, but was, instead, part and parcel of the couple's lengthy pre-marital relationship. Even considering a higher standard of living after the marriage, that fact alone would not be the type of change in circumstances that justifies setting aside part of a valid prenuptial agreement. If that were so, it is hard to imagine a situation in which a spousal support limitation in a prenuptial agreement would be valid, especially given that such agreements are often the product of income inequality. *Compare Fletcher v. Fletcher*, 68 Ohio St.3d 464, 467 (1994) (emphasizing that a prenuptial agreement can be valid even when the party challenging the agreement would receive disproportionally less than would result from an equitable distribution).

{¶13} As in *Saari*, therefore, we agree with Husband that the trial court erred in this case by setting aside the spousal support provisions of the prenuptial agreement apart from changed circumstances that rendered their application unconscionable. Husband's first assignment of error is sustained.

ASSIGNMENT OF ERROR II

THE COURT ERRED IN NOT CREDITING [HUSBAND] FOR COSTS PAID DURING THE PENDENCY OF THE CASE.

{¶14} Husband has also argued that, in the event that this Court overrules his first assignment of error, we should conclude the trial court erred by failing to offset his spousal support award by expenses that he paid while the divorce case was pending. This Court has sustained his first assignment of error, so his second assignment of error is moot. *See* App.R. 12(A).

III.

{¶15}  Husband's first assignment of error is sustained.  His second assignment of error is moot.  The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is reversed.

Judgment reversed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

STEVE C. BAILEY, Attorney at Law, for Appellant.

JAMES MCILVAINE, Attorney at Law, for Appellee.